**Diane PELTZ, Plaintiff,**

v.

**NORTHERN OHIO BANK, et al., Defendants.**

**Civ. A. No. C 76–11.**

United States District Court, N. D. Ohio, E. D.

Dec. 23, 1976.

Alan S. Belkin, Shapiro, Turoff & Gisser, Cleveland, Ohio, for plaintiff.

James A. Dull, Ron Tonidandel, Cleveland, Ohio, for Peat, Marwick & Mitchell & Co.; David R. Hyde, Ada Meloy, Cahill, Gordon & Reindel, New York City, on the brief.

James A. Smith, Cleveland, Ohio, for Northern Ohio Bank and Federal Deposit Ins. Corp.

MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Defendant Peat, Marwick, Mitchell & Co. (PMM) has moved to dismiss this case as to it. In a related case, *Imperial Supply Co., Inc., Profit Sharing Trust, et al. v. Northern Ohio Bank et al.*, 430 F.Supp. 339 (N.D. Ohio 1976), the motions to dismiss were overruled; and that ruling served as the basis on December 17, 1976, for a memorandum overruling FDIC's motion to dismiss in this case. However, treating FDIC's motion as embracing a motion to strike, certain subparagraphs of the instant complaint have been stricken. Grounds for dismissal urged by PMM, not presented in FDIC's motion, will now be considered.

I.

PMM first moves to dismiss on the grounds that "plaintiff does not allege that her purchases occurred after PMM rendered opinions as the independent auditor of NOB." However, plaintiff points out in her reply to PMM's motion (not controverted by PMM) that

In a conversation subsequently confirmed by letter PMM's counsel was advised that plaintiff purchased 3000 shares of NOB stock in March-April, 1971 and 2000 shares of NOB stock in October-November, 1973. PMM's counsel was further advised that plaintiff paid $25.00 per share for her first 3000 shares and $24.00 per share for the remainder.

At the time the present motion and memorandum was filed by PMM it knew that plaintiff had purchased NOB stock subsequent to the occurrence of the alleged fraudulent acts and misrepresentation. Under these circumstances dismissal of the complaint solely on the basis of the omission of the dates of purchase is inappropriate.

Moreover the complaint can easily be amended to reflect the information recited above . . . .

Plaintiff's statements with regard to both purchases are confirmed by an examination of the stock transfer records of NOB, introduced as exhibits in the *Imperial Supply* case. However, the main portion of plaintiff's complaint relevant to her cause of action against PMM, paragraph 15 of count I, identifies as false and misleading financial statements issued on behalf of NOB, and "audited and certified" by PMM, for the years 1971, 1972, 1973, and 1974. Since plaintiff bought her stock in late 1973, neither the 1973 financial statement nor the 1974 financial statement (PMM denies issuing any opinion on the 1974 financial statement) could possibly have induced her purchases. Moreover, although a reading of the complaint clearly shows that no allegation against PMM relates to plaintiff's initial purchase, the charges with regard to both purchases are set forth in the same count, and plaintiff's prayer for relief seeks the same judgment against all defendants.

In order to clear up these lapses in plaintiff's complaint, she is directed to file with the court by January 7, 1977, a second amended complaint that shall:

1) set forth precisely the dates of her purchases of NOB stock;

2) state in separate counts her causes of action relating to her March-April 1971 and October-November 1973 purchases, clearly indicating whom she wishes to charge with Rule 10b–5 violations with regard to each purchase and deleting references to allegedly misleading statements and reports by NOB or PMM after her second set of purchases; and

3) delete from the second amended complaint those portions of count I of the original complaint ordered stricken by the court's order of December 17, 1976.

4) Assuming count II of the current complaint seeks to state a pendent cause of action under state common or statutory law, plaintiff is ordered to amend it to specify the fraud charged jointly or severally against the different defendants.

## II.

■ Additionally, PMM argues that plaintiff's complaint does not satisfy the particularity of pleading standards of Rule 9(b), Federal Rules of Civil Procedure, in its charges against PMM. In part this contention relates to the manner in which plaintiff has pleaded scienter on the part of PMM, rather than to the statements alleged to have been false and misleading.[1] Specifically, PMM contends that the allegations that it "knew or should have known" that the statements it audited "misrepresented or falsely presented the true aspect of NOB's financial condition" do not allege scienter in the manner required by Rule 9(b) in light of the Supreme Court's ruling concerning the need to prove scienter in

---

1. PMM also appears to argue that four of the matters alleged in paragraph 15 to have been misrepresented or omitted in the financial statements related to "matters which are not within the scope of financial statements." These allegations are made with sufficient particularity to satisfy the standards of Rule 9(b), however, and the court regards the contention that these matters do not fall within the scope of financial statements as raising an issue of fact that cannot be resolved at this stage of the litigation.

Rule 10b–5 cases in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

While the Supreme Court in *Hochfelder,* 425 U.S. at 194, n.12, 96 S.Ct. at 1381, said, "In this opinion the term 'scienter' refers to a mental state embracing intent to deceive, manipulate or defraud," the note added:

> We need not address here the question whether, in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b–5.

Pre-*Hochfelder,* relying on *Lanza v. Drexel,* 479 F.2d 1277 (2 Cir. 1973), the Sixth Circuit in *SEC v. Coffey,* 493 F.2d 1304, 1314 (6 Cir. 1973), a rule 10b–5 case, held that

> [I]t is essential that the SEC show that Coffey's inaction was in "wilful or reckless disregard for the truth."

Relying on *SEC v. Coffey,* this court concludes that scienter, an essential element in plaintiff's claim against PMM, requires proof of either actual knowledge of misrepresentations or "wilful or reckless disregard for the truth."[2] The word "knew" meets the first half of this requirement, but "should have known" may not be equated in this court's view with "reckless disregard for the truth."[3] Therefore, those words will be stricken. When the plaintiff files her further amended complaint she is directed to strike "should have known," but she may conform her claim to the language of *SEC v. Coffey, supra.*

Subject to plaintiff's filing a second amended complaint as described above, PMM's motion to dismiss her complaint as to it is overruled. The time for all defendants to answer shall run from the filing of the second amended complaint.

IT IS SO ORDERED.

---

**2.** In *Transairco, Inc. v. R. Paul Sprague, et al.,* No. C73–135 (N.D.Ohio July 29, 1975), this court, following *SEC v. Coffey, supra,* and *Lanza v. Drexel, supra,* held:

> Hence, the fourth element which the plaintiffs must prove is that any misrepresentation or half-truths made in [Arthur E.] Andersen's certified audit constitute a wilful or reckless disregard for the truth by Andersen. Although not pleaded by the plaintiffs, it is deemed to be an essential part of their second cause of action, based as it is on Rule 10b–5(2).

**3.** Rulings emanating from the Southern District of New York, the source of most of the cases cited by PMM, are split on the question of whether the phrase "knew or should have known" adequately alleges scienter. *Compare,* for instance, *Voegel v. Brown,* [1974–75] CCH Fed.Sec.L.Rep. ¶ 94,831 at 96,785 (S.D.N.Y. 1974), *with Oleck v. Fischer,* 401 F.Supp. 651 (S.D.N.Y.1975), *and see Rich v. Touche Ross & Co.,* 415 F.Supp. 95 (S.D.N.Y.1976). What is clear is that while the allegation that a defendant "knew" that a statement was false or misleading does adequately plead scienter, "should have known" can only be considered adequate if it is interpreted, as in *Oleck, supra,* to allege a "willful, deliberate, or reckless disregard for the truth."